**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Douglas E. Robinson, | ) | No. CV-06-53-PHX-DGC |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| Jo Anne B. Barnhart, Commissioner of the Social Security Administration, | ) ) ) ) | |
| Defendant. | ) ) | |
| | ) | |

Pending before the Court are Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Dkt. ##20, 28. The parties have filed responses to the motions and Plaintiff has filed a reply. Dkt. ##27, 31. For the reasons set forth below, the Court will grant Plaintiff's motion and deny Defendant's cross-motion.

**I.   Background.**

Plaintiff applied for disability insurance benefits and supplemental security income on June 26, 2002, claiming a disability onset date of July 23, 1997. Dkt. #12, Tr. 61-65. Plaintiff amended his alleged onset date to May 19, 2003. Tr. 15. The application was denied initially and on reconsideration. Tr. 39-42, 45-48. A hearing before an Administrative Law Judge ("ALJ") was held on June 9, 2004. Tr. 740-86. The ALJ issued a written decision on July 16, 2004, finding that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 15-24. This decision became Defendant's final

1 decision when the Appeals Council denied review on November 10, 2005. Tr. 7-9. Plaintiff
2 then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). Dkt. #1.

3 **II.     Standard of Review.**

4 Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In determining whether the decision is supported by substantial evidence, the Court must consider the record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *See Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998). The Court cannot affirm the decision "simply by isolating a 'specific quantum of supporting evidence.'" *Robbins*, 466 F.3d at 882 (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)); *see Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (same).

15 **III.    Analysis.**

16 The ALJ found that Plaintiff had the following severe impairments: chronic hepatitis C, chronic musculoskeletal pain, moderate bilateral foraminal stenosis, history of diarrhea, bipolar disorder, and polysubstance dependence. Tr. 16, 23 ¶ 3. The ALJ further found that these severe impairments did not meet or medically equal a listed impairment. Tr. 16, 23 ¶ 4. The ALJ concluded that Plaintiff had the physical residual functional capacity ("RFC") to perform a limited range of light exertional work, and that sedentary unskilled jobs existed in significant numbers in the national economy. Tr. 17, 23 ¶ 6, 24 ¶¶ 10-11.[1]

23 Plaintiff argues that the ALJ erred in step five of the sequential evaluation process followed in resolving disability claims, i.e., whether Defendant has shown that Plaintiff had the RFC to perform work existing in significant numbers in the national economy consistent

---

[1] "Residual functional capacity" is the most a claimant can do despite the limitations caused by physical and/or mental impairments. *See Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989); 20 C.F.R. §§ 404.1545(a), 416.927(a); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).

1  with Plaintiff's age, education, and past work experience. Dkt. #26 at 4; *see* 20 C.F.R. §§
2  404.1520(a)(4), 416.920(a)(4) (setting forth the five-step sequential evaluation process).
3  Specifically, Plaintiff argues that the ALJ erred in (1) assessing the functional limitations
4  caused by Plaintiff's mental impairments, (2) determining the amount of weight afforded to
5  the medical opinions, (3) determining Plaintiff's physical limitations, (4) evaluating
6  Plaintiff's testimony, and (5) determining vocational issues. Dkt. #26 at 4-16. Defendant
7  contends that the ALJ did not err and that her decision is supported by substantial evidence.
8  Dkt. #30.

9  As explained more fully below, the Court concludes that Defendant's decision to deny
10 benefits must be reversed because the ALJ failed to consider all of Plaintiff's impairments
11 in determining Plaintiff's RFC and gave improper weight to medical opinions and Plaintiff's
12 own testimony. The Court accordingly need not address Plaintiff's other challenges to
13 Defendant's decision.

14 **A.    Plaintiff's Impairments.**

15 The ALJ found that Plaintiff had a history of severe diarrhea and abdominal pain and
16 had been diagnosed with irritable bowel syndrome and possible celiac sprue disease. Tr. 16,
17 18, 23 ¶ 3.[2] The ALJ, however, failed to consider these impairments in determining
18 Plaintiff's RFC. This constitutes legal error. "In determining whether an individual's . . .
19 impairments are of sufficient medical severity that such . . . impairments could be the basis
20 of eligibility under this section, the Commissioner of Social Security shall consider the
21 combined effect of *all* of the individual's impairments without regard to whether any such
22 impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B)
23 (emphasis added); *see* 20 C.F.R. §§ 404.1520(c), 416.920(c) (Commission to consider
24 "combination of impairments"); 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) (Commission
25 to consider "all" impairments); SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (same);
26 *see also Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996) (Commissioner must consider the

27
28     [2]A person with celiac sprue disease has a severe intolerance to gluten, a protein found in foods containing wheat, rye, barley, and oats.

- 3 -

1  combined effect of all impairments in determining whether the claimant is disabled) (citing
2  *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988)); *Lester v. Chater*, 81 F.3d 821, 830
3  (9th Cir. 1996) (Commissioner "should have considered the combined effect of the
4  claimant's physical and mental impairments in determining [RFC]"); *Hammock*, 879 F.2d
5  at 500 (error not to "consider the combined effect of all of Hammock's impairments on her
6  ability to return to work").[3]

**B.     Dr. Joseph Nolan's Opinions.**

The medical evidence shows that Plaintiff's primary care physician, Dr. Eduardo Alcantar, treated Plaintiff for his chronic musculoskeletal pain and other physical impairments from August 2002 until June 2004. Tr. 457-71, 654-76, 678-82. Dr. Alcantar referred Plaintiff to rheumatologist Joseph Nolan. Tr. 662, 677. Plaintiff visited Dr. Nolan on October 10, 2003, complaining that "he hurt[] all over all the time" and that "his physical activities [were] markedly limited because of this pain." Plaintiff stated that he could not get any work done because virtually everything that he tried to do made the pain worse. Dr. Nolan's assessment was that Plaintiff suffered from chronic diffuse musculoskeletal pain. Dr. Nolan opined that this pain was "due to the musculoskeletal complications of chronic hepatitis C," noting that Plaintiff "[did] not truly have a rheumatic disease to explain his problem." Dr. Nolan discussed his findings with Plaintiff and referred him to a pain management specialist for further evaluation and treatment. Tr. 677.[4]

The ALJ concluded that the clinical evidence did not support Plaintiff's allegations of disabling pain and limitations. Tr. 18. In support of this conclusion, the ALJ relied on Dr. Nolan's opinion that Plaintiff did not have a rheumatic disease. Tr. 18. But the ALJ

---

[3]Defendant contends that Plaintiff's "allegations of frequent bowel movements do not appear beyond September 19, 2003 and are totally unsupported by the record for the period that he claims he became disabled." Dkt. #30 at 10. To the contrary, a February 5, 2004 treatment note states that Plaintiff "continues to have diarrhea almost after every meal" and that "whole lots of food [have been] eliminated." Tr. 654.

[4]Plaintiff visited Dr. Nolan for a follow up visit on August 14, 2004, after the ALJ issued her decision in this matter. Tr. 738-39.

failed to address Dr. Nolan's opinion that complications of hepatitis C caused Plaintiff chronic diffuse musculoskeletal pain. *See* Tr. 677. The ALJ's failure to consider and evaluate this opinion constitutes legal error. Commission regulations specifically state that all evidence in a case record will be considered. *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3); 20 C.F.R. §§ 404.1527(b), 416.927(b). And the Ninth Circuit has held that an ALJ's rejection of a doctor's opinion was error and not supported by substantial evidence where the ALJ selectively focused on aspects of the medical opinion suggesting non-disability. *See Edlund v. Massanari*, 253 F.3d 1152, 1158-60 (9th Cir. 2001); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996); *Lester*, 81 F.3d at 833.[5]

Defendant contends, without citing any legal authority, that the ALJ did not err in ignoring Dr. Nolan's opinion that Plaintiff's pain was caused by complications of hepatitis C because Dr. Nolan was not a treating source since Plaintiff visited Dr. Nolan on only two occasions and referred to Dr. Alcantar as his "primary care physician." Dkt. #30 at 9. This contention lacks merit for several reasons. First, the ALJ did not reject Dr. Nolan's opinion on the ground that he was not a treating doctor. This Court must review the adequacy of the reasons specified by the ALJ, not the *post hoc* contentions of Defendant. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc). Second, the fact that Plaintiff visited Dr. Nolan twice does not preclude a finding that he was a treating source. *See* 20 C.F.R. §§ 404.1502, 416.902; *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) ("Section 404.1502 neither explicitly forbids nor requires crediting a physician 'treating' status whose patient contact is . . . limited. Its language suggests that 'a few times' or contact as little as twice a year would suffice, but it does not state that this frequency of patient contact represents a

---

[5] *See also Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("[The doctor's] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.").

- 5 -

1 floor."). Nor does the fact that Dr. Alcantar was Plaintiff's primary care physician preclude
2 a finding that Dr. Nolan also treated Plaintiff. *See* 20 C.F.R. §§ 404.1527(d)(2),
3 416.927(d)(2) ("[W]e give more weight to opinions from your treating *sources*, since these
4 *sources* are likely to be the medical professionals most able to provide a detailed,
5 longitudinal picture of your medical impairment(s)[.]") (emphasis added); SSR 96-5P, 1996
6 WL 374183, at *2 (July 2, 1996) (referring to "treating sources"). Finally, even if Dr. Nolan
7 was not a treating source, the ALJ was still required to consider and evaluate all of his
8 opinions. Commission regulations state that "[r]egardless of its source, we will evaluate
9 every medical opinion we receive." 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5P, 1996
10 WL 374183, at *2 ("[O]pinions from any medical source . . . must never be ignored."); *see*
11 *also Lester*, 81 F.3d at 830 (discussing the weight an ALJ should give to various medical
12 opinions).

13 Defendant further contends that Dr. Nolan could find no medical explanation to
14 account for Plaintiff's pain. Dkt. #30 at 9. But the ALJ did not assert this as a reason for
15 rejecting Dr. Nolan's opinion. Moreover, Dr. Nolan specifically stated that he believed
16 Plaintiff's pain was "due to the musculoskeletal complications of chronic hepatitis C."
17 Tr. 677.

18 **C.    Plaintiff's Testimony.**

19 Plaintiff testified at the hearing that he was unable to work due to severe joint and
20 muscle pain. He further testified that he experienced continuous pain throughout his body.
21 Tr. 17, 740-86. The ALJ found this testimony not credible, stating that there was not
22 objective medical evidence of the pain. Tr. 18, 21, 23 ¶ 5.

23 "Pain of sufficient severity caused by a medically diagnosed 'anatomical,
24 physiological, or psychological abnormality' may provide the basis for determining that a
25 claimant is disabled." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing
26 42 U.S.C. § 423(d)(5)(A); *Bunnell*, 947 F.2d at 344-45). Moreover, "[o]nce a claimant
27 produces objective medical evidence of an underlying impairment, an ALJ may not reject a
28 claimant's subjective complaints based solely on lack of objective medical evidence to fully

corroborate the alleged severity of pain." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citation and alterations omitted); *see Smolen*, 80 F.3d at 1282 ("The claimant need not produce objective medical evidence of the pain . . . itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.") (citing *Bunnell*, 947 F.2d at 345-48); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996) (same); *see also* SSR 95-5p, 1995 WL 670415, at *1 (Oct. 31, 1995) ("Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, careful consideration must be given to any available information about symptoms."). In addition, unless the ALJ "makes a finding of malingering based on affirmative evidence thereof, he or she may only find [the claimant] not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins*, 466 F.3d at 883 (citing *Smolen*, 80 F.3d at 1283-84). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Reddick*, 157 F.3d at 722 (quoting *Lester*, 81 F.3d at 834); *see Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (same).

In this case, it is undisputed that Plaintiff suffers from chronic hepatitis C and musculoskeletal pain. The ALJ found that these impairments were severe. Tr. 16, 23 ¶ 3. Dr. Nolan opined that Plaintiff's chronic musculoskeletal pain was caused by complications of his hepatitis C. Tr. 677. Plaintiff has thus "produced medical evidence of underlying impairments consistent with his subjective complaints[.]" *Regennitter v. Comm'r of Soc. Sec.*, 166 F.3d 1294, 1296 (9th Cir. 1999).

Because the ALJ made no finding that Plaintiff was malingering, she was required to give clear and convincing reasons in support of her adverse credibility finding. *Robbins*, 466 F.3d at 883. This clear and convincing standard "is the most demanding required in Social

1 Security cases." *Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). The ALJ asserted multiple reasons for rejecting Plaintiff's testimony, but none of them is convincing or supported by substantial evidence.

**1.     Objective Medical Evidence.**

The ALJ found Plaintiff not credible because his "allegations of disabling pain and limitations [were] not supported by abnormal clinical findings or objective medical evidence in the record." Tr. 21. This is an improper reason for disbelieving Plaintiff. *See Robbins*, 466 F.3d at 884 (holding that lack of objective medical evidence was an improper reason for rejecting the claimant's testimony of disabling pain where there was evidence that the claimant had severe shoulder, back, and knee impairments) (citing SSR 96-7p, 1996 WL 374186, at *1; *Light*, 119 F.3d at 792).

Moreover, substantial evidence does not support the asserted reason when the record is considered as a whole. The ALJ concluded that Plaintiff's "abnormal clinical findings were limited to tenderness." Tr. 18. To the contrary, the overwhelming medical evidence shows that Plaintiff suffered from severe chronic musculoskeletal pain. *See* Tr. 16. Dr. Alcantar, who treated Plaintiff on a monthly basis for nearly two years, repeatedly diagnosed Plaintiff with chronic hepatitis C, rheumatoid arthritis, arthralgia, and fibromyalgia. Dr. Alcantar's numerous treatment notes indicate that Plaintiff suffered from chronic pain in his abdomen, back, neck, and joints. Tr. 457-58, 654-76, 678-82. Dr. Alcantar referred Plaintiff to Dr. Nolan, a rheumatic specialist. Dr. Nolan examined Plaintiff and diagnosed him with chronic diffuse musculoskeletal pain. Although Dr. Nolan ruled out a rheumatic disease, he found that Plaintiff's pain was related to his hepatitis C. Tr. 677. Following a second examination, Dr. Nolan indicated that Plaintiff's pain was most likely caused by hepatitis C as opposed to fibromyalgia. Significantly, Dr. Nolan opined that, regardless of the specific diagnosis, Plaintiff "[was] clearly medically disabled from performing gainful employment because of the severity of his pain" and his "physical activities [were] markedly restricted to the point that he [could not] work." Tr. 738-39. In sum, the ALJ's conclusion that objective medical evidence did not support Plaintiff's testimony of disabling pain is

neither a proper reason for discrediting the testimony nor supported by substantial evidence.[6]

### 2. Plaintiff's Daily Activities.

The ALJ rejected Plaintiff's complaints of disabling pain on the ground that his "testimony at the hearing and statements in the medical records confirmed that [he had] very little impairment in his activities of daily living." Tr. 20. Specifically, the ALJ found that Plaintiff was the sole caretaker of his two young daughters, was able to drive, cook, and grocery shop, and attended church. Tr. 17-21.

An ALJ "may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of [his] day performing household chores or other activities that are transferrable to a work setting." *Smolen*, 80 F.3d at 1284 n.7 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In this case, the ALJ did not address the limited nature of Plaintiff's daily activities or whether such activities were transferrable to the work place. Moreover, an examination of the entire record "shows that the ALJ has erred in characterizing statements and documents contained therein to reach the conclusion that [Plaintiff] exaggerated [his] symptoms." *Reddick*, 157 F.3d at 722. Plaintiff testified that he is not always able to get up in the morning and get his daughters off to school, and that his daughters do the laundry after school. Tr. 753, 762, 782.[7] Plaintiff further testified that doing the dishes is painful and that his entire house is a mess because he is unable to vacuum or clean the floors and walls. Tr. 763-64.[8] With respect to cooking and grocery shopping,

---

[6]Although the notes from Plaintiff's second visit with Dr. Nolan were not available to the ALJ before she issued her decision, the Court "properly may consider [the notes] because the Appeals Council addressed them in the context of denying [Plaintiff's] request for review." *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) (citing *Ramirez v. Shalala*, 8 F.3d 1449, 1152 (9th Cir. 1993)); *see* Tr. 7-9 (citing Ex. AC-4, Tr. 738-39).

[7]*See* Tr. 753 ("[S]ometimes, you don't get up, and you turn around and you're waking up finally about 10 o'clock, and you're going, where are my kids, and they had already got themselves up and got themselves ready, and went ahead and went off to school, and you're thinking God what a horrible father I am[.]").

[8]Specifically, Plaintiff testified as follows:

- 9 -

Plaintiff testified that he usually makes easy meals when he does the cooking and that it is very painful to pick up a gallon of milk and other items at the grocery store. Tr. 487, 765, 783.[9] With respect to driving, Plaintiff testified that it hurts to drive and that he drives as little as possible. Tr. 764-65.[10] Finally, Plaintiff testified that he is not always able to attend church due to his ailments. Tr. 766-67.[11]

The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping [and] driving a car, . . . does not in any way detract from [his] credibility as to [his] overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair*, 885 F.2d at 603); *see Reddick*, 157 F.3d at 722; *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987); *Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir. 1986). Considering the record as a whole and in the proper context, the Court concludes that substantial evidence does not support the ALJ's conclusion that Plaintiff's daily activities

---

> [T]he house is a mess, I can't run a vacuum because on account when I push it, it hurts my spine, so I don't run the vacuum so there's a lot of debris . . . . [F]or me to bend over and pick up something is quite a task . . . . [D]oing the dishes hurts, you know, because you turn around and you have to reach forward and wash the dishes and it, anytime I have to do anything that I have to reach forward on, it hurts. . . . [T]he house is a mess. It used to be clean, you know, I even still worked a hard job, and I still [went] in there and kept the house clean. Now the floor is dirty, the walls are dirty, everything is dirty because I got kids and they're being kids and even the bathroom's a mess.

Tr. 763-64; *see* Tr. 745-46 ("[A]ll I want to do is take care of the kids . . . [and] I can't even do that."); Tr. 765 ("I'm living the life of a housewife, but then I'm not getting the housework done, I'm not getting all the things done.").

[9]*See* Tr. 487 (stating that Plaintiff "generally does microwave meals only"); Tr. 783 ("Cooking is, it's fajitas, corn dogs [and] sometimes I do the cooking myself and then it's something that you can put together in a few minutes.").

[10]*See* Tr. 764 ("I drive to church, I drive to the store, I drive to the doctor's offices and that's about it.")

[11]*See* Tr. 766 ("[O]ccasionally I miss [services] when I'm sick. . . . [S]ometimes it's just like . . . you can't wake up, you can't move, you can't do anything[]").

- 10 -

1 were inconsistent with his pain testimony. *See Benecke*, 379 F.3d at 594; *Vertigan*, 260 F.3d
2 at 1050; *Reddick*, 157 F.3d at 722; *Regennitter*, 166 F.3d at 1297; *see also Holohan*, 246 F.3d
3 at 1208.

### 3. Work Related Issues.

Plaintiff testified at the hearing that he stopped working in May 2003. Tr. 745. The ALJ concluded that this statement was untruthful on the ground that a medical record indicated that Plaintiff "was working in the maintenance department of his apartment complex until July of 2003" and Plaintiff "stated that he was going to try to find part-time work[.]" Tr. 21-22 (citing Tr. 591). The medical record actually provides that Plaintiff "was *previously* working at [the apartment] complex in the maintenance [department]." Tr. 591 (emphasis added). There is no way to tell from the medical record whether Plaintiff performed maintenance work at the apartment complex after May 19, 2003, the alleged onset date of disability. Moreover, Plaintiff specifically explained at the hearing that he stopped doing maintenance work for the apartment complex prior to May 2003. Tr. 779. The ALJ's decision to discredit Plaintiff's testimony on this ground is not supported by substantial evidence. In addition, Plaintiff's mere desire to try to find part-time work does not render his disabling pain testimony incredible considering the record as a whole. *See Moore*, 278 F.3d at 924-25 ("[T]he SSA's regulations provide for a 'trial work period' in which a claimant may test [his] ability to work and still be considered disabled.'") (citing 20 C.F.R. § 404.1592); *Lester*, 81 F.3d at 833 ("In evaluating whether the claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's 'ability to work on a *sustained* basis.' Occasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability.") (quoting 20 C.F.R. § 404.1512(a); emphasis in original); SSR 96-8p, 1996 WL 374184, at *7.

### 4. Plaintiff's Use of Alcohol.

Plaintiff testified at the hearing that he had a history of drug and alcohol use. Plaintiff stated that he occasionally drank one or two beers at night to help him sleep and that he did not get drunk or drink alcohol during the day. Tr. 17, 759-61. The ALJ stated that Plaintiff's

1 "credibility [was] undermined because he denied having any history of alcohol abuse at his
2 consultive evaluation." Tr. 22 (citing Tr. 486-92 (5/19/03 report of Steven Hirdes, Ed.D.,
3 indicating that Plaintiff "denied any history significant for alcohol abuse")). The ALJ,
4 however, does not cite any evidence showing that Plaintiff had a history of alcohol abuse.
5 The medical evidence is consistent with Plaintiff's testimony at the hearing that he used
6 alcohol in moderation to help him sleep. Tr. 315, 320. Plaintiff's denial of a history of
7 alcohol abuse is not a convincing reason supported by substantial evidence for rejecting
8 Plaintiff's testimony. *See Robbins*, 466 F.3d at 884, n.2 (holding that the ALJ erred in
9 finding the claimant's testimony not credible based on his apparent inconsistent statements
10 regarding alcohol use where the ALJ's assessment of the claimant's statements was "missing
11 from the record, and no effort appear[ed] to have been made to investigate the possible
12 disparity during the hearing").

13 Plaintiff testified at the hearing that alcohol was recommended to him by the nurse
14 practitioner at Dr. Alcantar's office and that the nurse wrote him a prescription for nightly
15 alcohol with Dr. Alcantar's acquiescence. Tr. 22, 740-86. The ALJ found it "incredible that
16 [Plaintiff's] doctor or nurse practitioner would recommend the use of alcohol given
17 [Plaintiff's] chronic hepatitis C, bipolar disorder, pain medication, and history of drug and
18 alcohol abuse." Tr. 22. If the ALJ had developed the record further on this issue, however,
19 she would have learned that Plaintiff was in fact prescribed nightly alcohol by a nurse
20 practitioner at Dr. Alcantar's office. Dkt. #26 Ex. 4 (2/5/04 prescription by FNP Sharon
21 Ponce indicating that Plaintiff was "drinking 2 beers each evening for help to go to sleep").
22 Whether or not prescribing Plaintiff alcohol was sound medical treatment given some of his
23 impairments, the ALJ erred in finding Plaintiff less credible merely because he testified that
24 he had in fact received such treatment.

25 **D.    The Decision to Remand for Further Proceedings or an Award of Benefits.**

26 Having decided to vacate Defendant's decision, the Court has the discretion to remand
27 the case for further development of the record or for an award benefits. *See Reddick*, 157
28 F.3d at 728. In *Smolen*, the Ninth Circuit held that evidence should be credited and an action

1   remanded for an immediate award of benefits when the following three factors are satisfied:
2   (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) there
3   are no outstanding issues that must be resolved before a determination of disability can be
4   made, and (3) it is clear from the record that the ALJ would be required to find the claimant
5   disabled were such evidence credited.  80 F.3d at 1292; *see Varney v. Sec. of Health &*
6   *Human Servs.*, 859 F.2d 1396, 1400 (9th Cir. 1988) (*Varney II*) ("In cases where there are
7   no outstanding issues that must be resolved before a proper determination can be made, and
8   where it is clear from the record that the ALJ would be required to award benefits if the
9   claimant's excess pain testimony were credited, we will not remand solely to allow the
10  ALJ to make specific findings regarding that testimony."); *Swenson v. Sullivan*, 876 F.2d
11  683, 689 (9th Cir. 1989) (same); *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989)
12  ("In a recent case where the ALJ failed to provide clear and convincing reasons for
13  discounting the opinion of claimant's treating physician, we accepted the physician's
14  uncontradicted testimony as true and awarded benefits.") (citing *Winans v. Bowen*, 853 F.2d
15  643, 647 (9th Cir. 1988)); *Hammock*, 879 F.2d at 503 (extending *Varney II*'s "credit as true"
16  rule to a case with outstanding issues where the claimant already had experienced a long
17  delay and a treating doctor supported the claimant's testimony).  On many occasions since
18  *Smolen*, the Ninth Circuit has reaffirmed the rule that improperly rejected evidence must be
19  credited as true.  *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000); *Lester*, 81 F.3d
20  at 834; *Reddick*, 157 F.3d at 729; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir.
21  2002); *Moisa*, 367 F.3d at 887; *Benecke*, 379 F.3d at 593-95.  At least one panel, however,
22  has explicitly held that  the "credit as true" doctrine is not mandatory in the Ninth Circuit.
23  *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell*, 947 F.2d at 348;
24  *Dodrill*, 12 F.3d at 919; *Ngyuen v. Chater*, 100 F.3d 1462, 1466-67 (9th Cir. 1996); *Byrnes*
25  *v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995)).

26          The Court need not choose between these "two opposing lines of authority, neither
27  of which has an unimpaired claim to being the law of the circuit.'" *Greenhow v. Sec. of*
28  *Health & Human Servs.*, 863 F.2d 633, 636 (9th Cir. 1988), *overruled in part by United*

*States v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992) (en banc)).  The Court concludes, on the specific record before it, that Plaintiff's testimony of disabling pain should be credited as true and the case remanded for an award of benefits.  The ALJ acknowledged in her decision that she had weighed all relevant factors in making her adverse credibility determination.  Tr. 22; *see Smolen*, 80 F.3d at 1284.  Moreover, Plaintiff's testimony is consistent with the medical evidence, and at least one doctor explicitly found that Plaintiff's statements regarding the severity of his symptoms were credible and consistent.  Tr. 453.  The ALJ has acknowledged that if Plaintiff's testimony is credited, a disability finding would be required.  Tr. 785; *see* Tr. 22-24 (finding that steps one through four of the disability evaluation process had been satisfied).  Thus, "a remand for further proceedings would serve no useful purpose." *Reddick*, 157 F.3d at 730.

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (Dkt. #20) is **granted** and Defendant's cross-motion for summary judgment (Dkt. #28) is **denied**.

2. Defendant's administrative decision is **vacated**.

3. The case is **remanded** for an award of benefits.

DATED this 11th day of December, 2006.

David G. Campbell
United States District Judge

- 14 -